IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LARRY BARR, ANTHONY BARTON, STEPHEN BUSCH, BRIAN CARLSON, PETER DENNIS, DAN DORR, CLARK GOBLE, WARREN MARTIN, BILLY PIERCE, JESSE ROBINSON, DAVID SHATTO, and DOUGLAS TOELKES,** | No. 3:17-cv-01225-MO<br><br>OPINION AND ORDER |
| Plaintiffs, | |
| v. | |
| **ROSS ISLAND SAND & GRAVEL CO.,**<br>an Oregon corporation, | |
| Defendant. | |

**MOSMAN, J.**,

This mater comes before the Court on Plaintiffs' Motion to Remand to State Court [7]. For the reasons that follow, the Court DENIES Plaintiffs' Motion.

## FACTUAL BACKGROUND

Plaintiffs, current or former truck drivers employed by Defendant Ross Island Sand and Gravel Company ("RISG"), bring this action against Defendant in which they allege RISG failed to remit withholdings from Plaintiffs' paychecks to the Oregon Teamsters Employers Trust Fund ("OTETF") for the purpose of paying Plaintiffs' health insurance premiums. Plaintiffs allege they lost their health insurance as a result of Defendant's failure to send the withholdings to the OTETF.

1 – OPINION AND ORDER

Under the terms of a collective bargaining agreement ("CBA") negotiated between Defendant and Plaintiffs' union, the General Teamsters Local Union No. 162 ("the Teamsters"), Defendant and its employees were both to contribute to the costs of the employees' health insurance benefits. Under the CBA Defendant was to pay 90% of the cost of benefits while withholding the other 10% from the employees' paychecks. Defendant was required to remit both the deducted employee contributions and Defendant's contributions to the OTETF, which managed the health insurance plan. After Defendant allegedly failed to remit the withholdings, the Teamsters filed grievances against Defendant on behalf of Plaintiffs that were settled after this litigation began. Plaintiffs, nonetheless, maintained this litigation on the basis that they were not yet fully compensated for their economic damages, noneconomic damages, potential punitive damages, and attorney fees and costs.

## PROCEDURAL BACKGROUND

Plaintiffs originally instituted this litigation against Defendant in Multnomah County Circuit Court in 2012 (hereinafter referred to as "the 2012 action"). In the 2012 action, Plaintiffs brought three claims against Defendant on the same factual premise: (1) a claim under Oregon Revised Statute § 652.610(3) for failure to timely remit the withholdings; (2) a claim for common-law money had and received; and (3) a claim for breach of fiduciary duty. *See Barr et al. v. Ross Island Sand & Gravel Co.*, 3:12-cv-00683-MO.

Defendant removed the 2012 action to this Court. Plaintiffs filed a Motion to Remand [15] that Defendant opposed on the basis that Plaintiffs' claims were preempted by the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act ("ERISA"). The Court found Plaintiffs' claims were preempted by LMRA, but not by ERISA and, therefore, denied Plaintiffs' Motion.

On June 5, 2013, the Court granted summary judgment to Defendant. Plaintiffs appealed, in particular contending the Court erred when it denied Plaintiffs' Motion to Remand. In a published decision on three consolidated cases including the 2012 action, the Ninth Circuit reversed and remanded. *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016). The Ninth Circuit held Claims One (§ 652.610) and Three (breach of fiduciary duty) were not preempted by LMRA, but that Claim Two (money had and received) was preempted and the Ninth Circuit affirmed the Court's grant of summary judgment to Defendant on that claim. *Id.* at 1037-42. The Ninth Circuit, therefore, remanded to this Court to determine whether this Court should retain supplemental jurisdiction over Claims One and Three notwithstanding the grant of summary judgment to Defendant on Claim Two. After oral argument on remand, the Court concluded it would not exercise supplemental jurisdiction over the remaining claims and, therefore, on April 21, 2017, the Court remanded the case back to Multnomah County Circuit Court.

After remand, however, Plaintiffs moved to amend their Complaint in the Multnomah County Circuit Court. That court granted Plaintiffs' Motion. Plaintiffs' First Amended Complaint (which is attached as Exhibit 3 to the Declaration of Benjamin Rosenthal [9]) retains the claims under Oregon Revised Statute § 652.610 (Claim One) and breach of fiduciary duty (Claim Two), but also adds claims for common-law conversion (Claim Three) and intentional

interference with contractual relationship (Claim Four).[1] In response to Plaintiffs' amendment of their Complaint, Defendant again removed the case to this Court. Plaintiffs, in turn, filed their Motion to Remand to State Court [7].

**DISCUSSION**

Plaintiffs move to again remand this action to the Multnomah County Circuit Court on the basis that they only raise state-law causes of action in their First Amended Complaint and, therefore, there is not any basis for subject-matter jurisdiction in this Court. Plaintiffs also seek an award of attorneys' fees and costs associated with this most recent removal pursuant to 28 U.S.C. § 1447(c) on the basis that Defendant's removal of this action lacks any objectively reasonable basis.

Defendant, on the other hand, contends removal is appropriate because Plaintiffs' new claims are completely preempted by LMRA and ERISA and, therefore, this Court has subject-matter jurisdiction over this matter.

**I.     Complete Preemption Doctrine**

"As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003); *see also Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014). "The well-pleaded complaint rule means that 'a case may not be

---

[1] The Court notes the Complaint that initiated the 2012 action was attached to Defendant's Notice [1] of Removal as the operative complaint. Defendant's Notice of Removal, however, also attached the Multnomah County Circuit Court's Order granting Plaintiffs' Motion to Amend together with the underlying pleadings, and, as discussed below, Defendant's removal of this case is premised on Plaintiffs' amendment of the Complaint. Plaintiffs' First Amended Complaint, however, has not been docketed in this case as the operative complaint. Accordingly, in order to ensure a clear record the Court directs Plaintiffs to file their First Amended Complaint. For purposes of this Opinion and Order, the Court considers the First Amended Complaint attached to the Rosenthal Declaration to be the operative complaint.

removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.'" *Retail Prop. Tr.*, 768 F.3d at 947 (emphasis omitted) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

"The Supreme Court has recognized, however, an 'independent corollary to the well-pleaded complaint rule known as the complete pre-emption doctrine.'" *Id* (quoting *Caterpillar*, 482 U.S. at 393). Under the complete preemption doctrine, "some federal statutes . . . have such 'extraordinary pre-emptive power' that they 'convert[ ] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (alteration in original) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete preemption, therefore, is "'really a jurisdictional rather than a preemption doctrine, [as it] confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim.'" *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (alteration in original) (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)).

## II. **LMRA Preemption**

Defendant contends Plaintiff's new claims for conversion and intentional interference with contractual relationship are preempted by LMRA.

As noted, the Ninth Circuit extensively discussed complete preemption under LMRA in *Kobold*. The Ninth Circuit explained LMRA "should be 'understood . . . as a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" *Kobold*, 832 F.3d at 1032 (quoting *Allis–Chalmers*

*Corp. v. Lueck*, 471 U.S. 202, 209 (1985)). "'The Court subsequently held that this federal common law preempts the use of state contract law in CBA interpretation and enforcement.'" *Id.* (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 689 (9th Cir. 2001) (en banc)). "In addition to promoting the development of a uniform federal labor law, § 301 preemption doctrine is designed 'in large part to assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law and lingering hostility toward extrajudicial dispute resolution.'" *Id.* (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 122 (1994)). "Critically, 'not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301.'" *Id.* (quoting *Lueck*, 471 U.S. at 211).

The Ninth Circuit, therefore, set out a two-prong test for determining when claims are preempted by LMRA in *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). "First, a court must determine 'whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there.'" *Kobold*, 832 F.3d at 1032 (alteration in original) (quoting *Burnside*, 491 F.3d at 1059). "To determine whether a right is independent of a CBA . . . a court must focus its inquiry on 'the legal character of a claim, as "independent" of rights under the collective-bargaining agreement [ ]and not whether a grievance arising from "precisely the same set of facts" could be pursued.'" *Id.* at 1033 (quoting *Livadas*, 512 U.S. at 123). "Only if the claim is 'founded directly on rights created by [a] collective-bargaining agreement[ ]' does § 301 preempt it." *Id.* (alterations in original) (quoting *Caterpillar*, 482 U.S. at 394).

"If the court determines that the right underlying the plaintiff's state law claim(s) 'exists independently of the CBA,' it moves to the second step, asking whether the right 'is nevertheless

substantially dependent on analysis of a collective-bargaining agreement.'" *Id.* at 1032 (quoting *Burnside*, 491 F.3d at 1059). This analysis "turns on 'whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not.'" *Id.* at 1033 (alterations in original) (quoting *Burnside*, 491 F.3d at 1060). The Ninth Circuit has "stressed that, in the context of § 301 complete preemption, the term 'interpret' is defined narrowly—it means something more than 'consider,' 'refer to,' or 'apply.'" *Balcorta v. Twentieth Century–Fox Film Corp.*, 208 F.3d 1102, 1108 (9th Cir. 2000).

In *Kobold* the Ninth Circuit assessed whether Plaintiffs' claims under Oregon Revised Statute § 652.610, breach of fiduciary duty, and money had and received were preempted by LMRA. As to Plaintiffs' § 652.610 claim, in which Plaintiffs alleged Defendants violated the statute by filing to timely remit the withholdings to OTETF, the Ninth Circuit found the first *Burnside* factor was not satisfied. The Ninth Circuit reasoned Plaintiffs' rights to timely remittances arose from § 652.610(4), which specifically governed the timing of the remittances, and "the primary text for determining whether [Defendant] violated § 652.610(4) is a calendar, not the RISG CBA." *Kobold*, 832 F.3d at 1040. As to the second *Burnside* factor, the Ninth Circuit concluded Plaintiffs' claims – although they required reference to the CBA on some level – did not require interpretation of the CBA. *Id.* Accordingly, the Ninth Circuit concluded Plaintiffs' § 652.610 claim is not preempted by LMRA.

With respect to Plaintiffs' breach of fiduciary duty claim, the Ninth Circuit found that the claim arose from Oregon Revised Statute § 652.710[2] and/or § 652.720[3] and, therefore, Plaintiffs

---

[2] Oregon Revised Statute § 652.710 provides: "All moneys collected by an employer from employees or retained from their wages . . . pursuant to a contract are trust funds and shall be placed and kept in separate accounts by the employer and shall promptly be paid over to the contractor."

7 – OPINION AND ORDER

invoked rights independent of the CBA. *Id.* at 1040–41. Moreover, the Ninth Circuit found Plaintiffs' breach of fiduciary duty claim did not require interpretation of the CBA because the adjudicating court only needed to determine whether Defendant satisfied the requirements of those statutes. *Id.* Accordingly, the Ninth Circuit concluded Plaintiffs' breach of fiduciary duty claim also is not preempted by LMRA.

The Ninth Circuit, however, found Plaintiffs' money had and received claim is completely preempted by LMRA. The court explained "[a] money had and received claim is rooted in 'the equitable principle that one who has been unjustly enriched by another should be required to make restitution.'" *Id.* at 1041 (quoting *Briggs v. Lamvik*, 255 P.3d 518, 525 (Or. App. 2011)). As the Ninth Circuit noted, "Oregon courts have declared that such a claim is 'based on a contract implied in law.'" *Id.* (quoting *Williamson v. Gov't Emps. Ins. Co.*, 270 P.3d 260, 263 (Or. App. 2011)). The court found Defendant's "authority to deduct funds from [Plaintiffs'] paychecks and [Plaintiffs'] right[s] to have those funds applied toward [their] health insurance premiums are purely contractual entitlements" without which Plaintiffs "would have no basis upon which to bring the money had and received claim." *Id.* Because the money had and received claim was not independent of the CBA, the Ninth Circuit concluded it was completely preempted on the basis of the first *Burnside* factor. *Id.*

### A. Plaintiffs' Conversion Claim

As noted, Plaintiffs added a conversion claim in their First Amended Complaint. Under Oregon law, conversion is defined as follows:

---

[3] Oregon Revised Statute § 652.720 provides: "No employer shall retain, directly or indirectly, from employees or from their wages any part of the money collected or retained under Or. Rev. Stat. [§] 652.710 for use or benefit of the employer."

> (1) Conversion is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.
>
> (2) In determining the seriousness of the interference and the justice of requiring the actor to pay the full value, the following factors are important:
>
>> (a) the extent and duration of the actor's exercise of dominion or control;
>>
>> (b) the actor's intent to assert a right in fact inconsistent with the other's right of control;
>>
>> (c) the actor's good faith;
>>
>> (d) the extent and duration of the resulting interference with the other's right of control;
>>
>> (e) the harm done to the chattel;
>>
>> (f) the inconvenience and expense caused to the other.

*Becker v. Pac. Forest Indus., Inc.*, 211 P.3d 284, 287 (Or. Ct. App. 2009) (quoting *Restatement (Second) of Torts* § 222A (1965)). The theory of Plaintiffs' conversion claim, therefore, is relatively straightforward: by collecting the withholdings from Plaintiffs' paychecks but failing to remit them to OTETF, Defendant exercised dominion or control over that money in such a way as to interfere with the rights of Plaintiffs to control it for the purpose of contributing to their health insurance premiums.

Unlike Plaintiffs' § 652.610 and breach of fiduciary duty claims that the Ninth Circuit found were not preempted in *Kobold*, however, the conversion claim does not implicate the violation of a specific, identifiable duty arising out of state law and that does not arise from any portion of the CBA. Instead, like Plaintiffs' money had and received claim, the conversion claim asserts Defendant breached the same duty that arose under the CBA; that is, Defendant failed to remit the withholdings to OTETF. Accordingly, Plaintiffs' conversion claim does not "involve[]

a right conferred upon an employee by virtue of state law." *See Burnside*, 491 F.3d at 1059. The Court concludes Plaintiffs' conversion claim is completely preempted by LMRA.

B.     **Plaintiffs' Intentional Interference with Economic Relations**

As noted, Plaintiffs also added a claim for intentional interference for contractual relationship in their First Amended Complaint. In their Reply Memorandum [15], Plaintiffs re-characterize this claim as a claim for "interference with an expected entitlement."

The Oregon tort that appears to best fit Plaintiffs' allegations is intentional interference with economic relations. The elements of a cause of action for intentional interference with economic relations under Oregon law are: "(1) the existence of a professional or business relationship (which could include, *e.g.,* a contract or a prospective economic advantage), (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the economic relationship, and (6) damages." *McGanty v. Staudenraus*, 901 P.2d 841, 844 (Or. 1995) (en banc); *see also Plotkin v. State Accident Ins. Fund*, 385 P.3d 1167, 1174 (Or. Ct. App. 2016). "To satisfy the element of improper means, the actionable conduct must be 'wrongful by some measure beyond the fact of the interference itself.'" *Plotkin*, 385 P.3d at 1174 (quoting *Top Serv. Body Shop v. Allstate Ins. Co.*, 582 P.2d 1365, 1371 (Or. 1978)). "Measures '[c]ommonly included among improper means are violence, threats or other intimidation, deceit or misrepresentation, bribery, unfounded litigation, defamation, or disparaging falsehood.'" *Id.* (alteration in original) (quoting *Top Serv. Body Shop*, 582 P.2d at 1371 n.11).

As alleged in his First Amended Complaint, the theory of Plaintiffs' intentional interference claim is that Defendant intentionally interfered with Plaintiffs' expected health insurance benefits by failing to remit the withholdings to OTETF. Just as with the conversion

claim, however, there is not any specific duty in Plaintiffs' intentional interference claim that arises independently of the CBA. Plaintiffs' rights to employer-subsidized health insurance, Defendant's authorization to withhold amounts from Plaintiffs' paychecks, and Defendant's duty to remit those withholdings to OTETF were all established by the CBA. Like Plaintiffs' conversion claim the international interference claim is merely a common law repackaging of a claim to enforce the CBA and to recover damages based on an alleged breach thereof.

On this record, therefore, the Court concludes Plaintiffs' intentional interference claim is preempted by LMRA.

### III.   ERISA Preemption

As noted, Defendant also contends Plaintiffs' conversion and intentional interference claims are preempted by ERISA. The court applies a two-part test derived from *Aetna Health, Inc. v. Davila*, 542 U.S. 200 (2004), for determining whether a state-law claim is preempted by ERISA: "'a state-law cause of action is completely preempted if (1) an individual, at some point in time, could have brought the claim under ERISA § 502(a)(1)(B), and (2) where there is no other independent legal duty that is implicated by a defendant's actions.'" *Fossen v. Blue Cross & Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107–08 (9th Cir. 2011) (quoting *Marin Gen. Hosp.*, 581 F.3d at 946). As to the first prong of the *Davila* test, the court must "initially determine whether the [employer] had created an ERISA employee welfare benefit plan and, if so, whether [the plaintiff] was a participant in that plan." *Studer v. Katherine Shaw Bethea Hosp.*, 867 F.3d 721, 724 (7th Cir. 2017). With respect to the second prong of the *Davila* test, the court "must ask whether or not an 'independent legal duty . . . is implicated by [the] defendant's actions.'" *Fossen*, 660 F.3d at 1110 (quoting *Davila*, 542 U.S. at 210). "This question requires a practical, rather than a formalistic, analysis because '[c]laimants simply cannot obtain relief by

dressing up an ERISA benefits claim in the garb of a state law tort.'" *Id.* at 1110–11 (quoting *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)).

ERISA § 502(a)(1)(B) provides:

> A civil action may be brought— (1) by a participant or beneficiary— . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a)(1)(B). An "employee welfare benefit plan" is defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.

29 U.S.C. § 1002(1).

It is undisputed that the health insurance benefits plans at issue in this case are ERISA employee welfare benefit plans, and that Plaintiffs are the beneficiaries of those plans. The Court, therefore, must determine whether Plaintiffs' conversion and intentional interference claims (1) could have been brought under ERISA § 502(a)(1)(B) and (2) whether there is any independent legal duty implicated by Defendant's actions.

Defendant contends this case is similar to a matter the Ninth Circuit addressed in *Filler v. Blue Cross of Cal.*, 593 F. App'x 685 (9th Cir. 2015). In *Filler* a medical care provider (Filler) to whom beneficiaries of ERISA plans assigned their claims brought an action against insurers in which Filler asserted claims for negligent entrustment, conversion, and interference with contractual relations premised on "recovering money owed to Filler's patients under an ERISA benefits plan." *Id.* at 686. The Ninth Circuit summarily found such claims "fell 'within the scope of ERISA § 502(a)'" and that "[t]he independent legal duties Filler alleged were merely attempts

to 'obtain relief by dressing up an ERISA benefits claim in the garb of a state law tort.'" *Id.* (quoting *Fossen*, 660 F.2d at 1110–11).

Defendant also relies on *Prince v. Sears Holdings Corp.*, 848 F.3d 173 (4th Cir. 2017), in which the plaintiff brought an action against his employer asserting common-law claims for misrepresentation, constructive fraud, and infliction of emotional distress after the defendant withheld life insurance premium contributions from his paycheck. The plaintiff, however, never obtained the life insurance because he did not submit required forms to the insurer. The Fourth Circuit held the plaintiff's claims were preempted by ERISA because the claims "challenge the administration of the ERISA plan – a core § 502(a) claim." *Id.* at 178. The Fourth Circuit explained:

> Prince is entitled to life insurance benefits only if the ERISA plan provided them. Sears withdrew premiums from Prince's pay only because the ERISA plan required Sears to do so. "It follows that if an individual brings suit complaining of a denial of coverage . . . , where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls 'within the scope of ERISA.'"

*Id.* at 178 (quoting *Davila*, 542 U.S. at 210).

Plaintiff contends *Filler* and *Prince* are distinguishable because, unlike those cases, "this case does not involve the recovery of specific benefits owed to [them] under the terms of any plan." Pl.'s Reply Mem. [15] at 4. Because Plaintiffs do not seek the recovery of specific benefits owed under any ERISA plan, Plaintiffs argue their conversion and intentional interference claims are not preempted by ERISA.

Plaintiffs, however, are incorrect to suggest that their claims could not be brought under § 502(a)(1)(B) because they seek to redress injuries beyond simply the recovery of specific benefits owed under their ERISA plans. The Supreme Court rejected this premise in *Davila*. In *Davila* the plaintiffs brought actions under the Texas Health Care Liability Act to redress injuries

13 – OPINION AND ORDER

that they incurred as a result of the denial of benefits. 542 U.S. at 204–05. The Supreme Court nonetheless found the plaintiffs' claims fell within the scope of § 502(a)(1)(B) because those claims did not arise from any duty independent of ERISA or the terms of the plan. *Id.* at 212–14. Moreover, the Supreme Court specifically rejected the Court of Appeals' finding that the plaintiffs' claims were not covered by § 502(a)(1)(B) because the plaintiffs "'assert[ed] a tort claim for tort damages' rather than 'a contract claim for contract damages,' and that respondents 'are not seeking reimbursement for benefits denied them.'" *Id.* at 214 (quoting *Roark v. Humana, Inc.*, 307 F.3d 298, 309 (5th Cir. 2002)). The Court reasoned "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive scope of ERISA simply 'by relabeling their contract claims as claims for tortious breach of contract.'" *Id.* The Court also emphasized "[n]or can the mere fact that the state cause of action attempts to authorize remedies beyond those authorized by ERISA § 502(a) put the cause of action outside the scope of the ERISA civil enforcement mechanism." *Id.* at 214– 15 (quoting *Allis-Chalmers*, 471 U.S. at 211).

The fact that Plaintiffs seek to obtain damages beyond the benefits owed, therefore, does not put their claims outside the scope of § 502(a)(1)(B). As in *Prince*, Plaintiffs "challenge the administration of the ERISA plan – a core § 502(a) claim." *Prince*, 848 F.3d at 178. The Court, therefore, agrees with Defendant that Plaintiffs' conversion and intentional interference claims could have been brought under § 502(a)(1)(B).

As to the second prong of the *Davila* test, the Court finds Plaintiffs' claims for conversion and intentional interference do not implicate any legal duties independent of ERISA. Defendant's alleged duties under the ERISA plans at issue in this case were to make its employer contributions and to remit the withholdings from Plaintiffs' paychecks to the OTETF. The crux

of Plaintiffs' conversion and intentional interference claims is that Defendant failed to fulfill the second of these duties (*i.e.*, failed to remit the withholdings to OTETF) and is thereby liable under the common-law doctrines of conversion and intentional interference with economic relations. Plaintiffs' intentional interference claim, in particular, proves too much. Plaintiffs' theory of intentional interference with economic relations is that Defendant, by failing to remit with withholdings to OTETF, interfered with Plaintiffs' ability to obtain their ERISA-protected health insurance benefits. That is a mine-run § 502(a)(1)(B) claim by another name. The legal duties implicated by Plaintiffs' conversion and intentional interference claims are the same as those implicated by a § 502(a)(1)(B) claim. The Court finds the second prong of the *Davila* test is also satisfied.

On this record, therefore, the Court concludes Plaintiffs' conversion and intentional interference claims are completely preempted by ERISA. Because Plaintiffs' conversion and intentional interference claims are preempted by LMRA and ERISA, this Court has subject-matter jurisdiction over those claims and Defendant's removal of this action to this Court was proper. The Court, therefore, also denies Plaintiffs' request for an award of attorneys' fees and costs associated with this most recent removal.

The Court also finds each of the four claims in Plaintiffs' First Amended Complaint stem from a common nucleus of operative fact and the exercise of supplemental jurisdiction over Plaintiffs' remaining state-law claims would serve the interests of judicial economy, convenience, fairness, and comity. *See Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004). Accordingly, the Court will exercise supplemental jurisdiction over Plaintiffs' § 652.610 and breach of fiduciary duty claims.

**CONCLUSION**

For these reasons, the Court DENIES Plaintiffs' Motion to Remand to State Court [7].

IT IS SO ORDERED.

DATED this __4th__ day of December, 2017.

                                                /s/ Michael W. Mosman
                                                MICHAEL W. MOSMAN
                                                Chief United States District Judge